# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANICE GOODMAN-ROBINSON, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No.:   03-1414 (RMU) |
| | : |
| UNITED STATES POSTAL SERVICE *et al.*, | : Document No.:   27 |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter is before the Court on the defendants' motion to dismiss or, in the alternative, for summary judgment. Having considered the motion, the plaintiff's opposition, the defendants' reply, and the existing record of this case, the Court will grant summary judgment for the defendants.

### II. BACKGROUND

The plaintiff, a former employee of the United States Postal Service (hereinafter "the defendant"), suffered an on-the-job back injury on November 23, 1998 when she tripped over a box . Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. ("Defs.' Mot."), Ex. 2 (Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation). She was diagnosed with "lumbar disc syndrome." *Id.*, Ex. 3 (Duty Status Report). By letter, the Labor Department's

Office of Workers' Compensation Programs informed the plaintiff that it had accepted her claim. Defs.' Mot., Ex. 4 (letter dated January 13, 1999 from Claims Examiner, Employment Standards Administration, Office of Workers' Compensation Programs, Division of Federal Employees' Compensation) at 1. Attached to the letter was a two-page document explaining, among other things, the plaintiff's obligation to notify the office of her return to work. *Id.* at 3. In relevant part, the document stated:

> When you return to work, or obtain new employment, notify this office right away. If you receive a compensation check which includes payment for a period you have worked, return it to us immediately to prevent overpayment of compensation.

*Id.*

The plaintiff's physician placed her on temporary total disability from December 2, 1998 through March 18, 1999.[1] Defs.' Mot., Ex. 5 (Investigative Memorandum dated September 9, 1999) at 1. During that time, the plaintiff received continuation of pay and loss of wage compensation from the Department of Labor. *Id.* On February 11, 1999, the plaintiff was placed on the periodic roll.[2] *Id.* She began to receive regular compensation payments beginning February 27, 1999. *Id.* She returned to work on partial disability status on March 23, 1999.[3] *Id.*

The plaintiff did not notify the Office of Workers' Compensation Programs of her return to work on March 23, 1999. Defs.' Mot., Ex. 6 (Notice of Removal). Review of the plaintiff's

---

[1] Although the Investigative Memorandum states that the plaintiff's physician placed her on temporary total disability from "December 2, 1999 through March 18, 1999," the Court presumes that the writer intended to establish December 2, 1998 as the beginning date of the plaintiff's period of disability. *See* Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. ("Defs.' Mot."), Ex. 5 at 1.

[2] The significance of placement "on the periodic roll" is unclear from the record.

[3] The plaintiff was told to return to work on March 19, 1999. Defs.' Mot., Ex. 5 at 1. Review of her attendance records showed that she returned to work on March 23, 1999. *Id.*

wage earnings and compensation history revealed that, for the period from March 27, 1999, through August 13, 1999, the plaintiff received both regular wages and compensation benefits.[4] *Id.*, Ex. 5 at 1. Because receipt of both wages and compensation checks violated Section 666.2 of the Employee and Labor Relations Manual, the defendant issued the plaintiff a Notice of Removal on November 20, 1999.[5] *Id.*

According to the defendant, the plaintiff was terminated for "unacceptable conduct," in that she "improperly accepted and cashed [workers' compensation benefit] checks with the knowledge that she had no reasonable right to do so." *See* Defs.' Mot., Ex. 1. The plaintiff challenged her termination by pursuing a discrimination claim with the Equal Employment Opportunity Commission ("EEOC"). Compl., Ex. 1 (EEOC's Denial of Request for Reconsideration). An administrative law judge found that the plaintiff failed to establish a *prima facie* case of discrimination on the basis of her disabilities (back injury and major depression/stress). *Id.*

The plaintiff brings this action under the Rehabilitation Act of 1973 ("Rehabilitation Act"), *see* 29 U.S.C. § 791 *et seq.*[6] Among other things, she demands reinstatement to her former position and a retroactive award of pay and benefits.

---

[4] The plaintiff received and cashed five compensation checks totalling $10,662.40. Defs.' Mot., Ex. 6.

[5] The plaintiff's employment was terminated effective September 14, 2001. *See* Defs.' Mot., Ex. 1 (Notification of Personnel Action).

[6] The plaintiff also brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*. Compl. at 1. Generally, Title VII prohibits unlawful employment practices because of an employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. The plaintiff, however, alleges that the defendant fired her because of her disability. Compl. ¶¶ 1, 5. Because disability discrimination is not covered under Title VII, the court dismisses the plaintiff's Title VII claim.

### III.  DISCUSSION

#### A.  Standard of Review

Summary judgment is granted to the movant if he has shown, when the facts are viewed in the light most favorable to the non-movant, that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* at 255; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).  The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

#### B.  The Plaintiff Fails to Establish a Discriminatory Reason for her Termination

In relevant part, the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  Under the Rehabilitation Act, an "individual with a disability" is a person who "has a physical or mental impairment which substantially limits one or more of such

person's major life activities." 29 U.S.C. § 705(20)(B)(i). In determining whether an employer violates the Rehabilitation Act, the standards applied are those applied under Title I of the Americans with Disabilities Act of 1990 ("ADA"), *see* 42 U.S.C. §§ 12111 *et seq.*, as it relates to employment. *See* 29 U.S.C. § 794(d).

The term "disability" is defined by regulation as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual."[7] 29 C.F.R. § 1630.2(g)(1). "Major life activities" are defined as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The plaintiff appears to allege that the defendant violated the Rehabilitation Act by terminating her employment on the basis of her disability, mental illness.[8] Compl. ¶¶ 4-5.

In the absence of direct evidence of discrimination, the Court applies the analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000) (discussing allocation of burden of proof for claims under the Rehabilitation Act). It is the plaintiff's initial burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802. To establish a *prima facie* case of discrimination under the Rehabilitation Act, the plaintiff must show that "she (1) is an individual with a

---

[7] The Equal Employment Opportunity Commission ("EEOC") promulgated regulations to implement Title I of the American with Disabilities Act ("ADA"). *See* 29 C.F.R. §§ 1630.1 *et seq.*

[8] The plaintiff suffers from "major depression and suicidal tendencies." Pl.'s Opp'n, Pl.'s Aff. ("Pl.'s Aff.") ¶ 1; *see* Compl., Ex. 1 (EEOC's Denial of Request for Reconsideration) (noting that "back injury, major depression/stress" were the plaintiff's claimed disabilities). The exhibits submitted with her opposition to the defendant's motion indicate that she had been hospitalized in October 1997, March 1998, and October 1998, and had been prescribed medication for depression. Pl.'s Opp.'n, Ex. 1-5, 7; Pl.'s Aff. ¶¶ 2-3.

disability (2) who, with or without reasonable accommodation, can perform the essential functions of the position, and (3) who suffered an adverse employment decision due to her disability." *Davis v. Ashcroft*, 355 F. Supp. 2d 330, 353 (D.D.C. 2005) (citing *Chinchillo v. Powell*, 236 F.Supp.2d 18, 23 (D.D.C. 2003); *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002)).  If a plaintiff succeeds in making out a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by producing "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (citation omitted); *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  At this point, the presumption of discrimination generated by the *prima facie* showing drops from the case, and the plaintiff has an opportunity to present evidence that a factor such as disability, not the defendant's proffered reasons, was the true reason for the adverse employment action. *Id.*, 450 U.S. at 254-55.

      The Court presumes, without deciding, that the plaintiff is disabled for purposes of the Rehabilitation Act, that she is qualified to perform the functions of her postal service position,

and that her termination is an adverse employment action.[9]

The defendant has shown that he took an adverse employment action for a legitimate, nondiscriminatory reason. Upon acceptance of her workers' compensation claim, the Department of Labor's Office of Workers' Compensation Programs, the plaintiff was advised of her obligation to notify that office upon her return to work. Defs.' Mot., Ex. 4 at 3. She further was advised of her obligation to return immediately any compensation check that covered any period during which she had worked. *Id.* An investigation revealed that the plaintiff had received and cashed five compensation checks between April and August 1999, after she returned to work and after she began to receive wages from the Postal Service. *Id.*, Ex. 5, Ex. 6. In addition, the defendant demonstrated that the receipt of both compensation checks and wages violated Section 666.2 of the Employee and Labor Relations Manual, which in relevant part provides:

> Employees are expected to conduct themselves during and outside of working hours in a manner[] which reflects favorably on the Postal Service. Although it is not the policy of the Postal Service to

---

[9] It is not clear that the plaintiff has a "disability" under the Rehabilitation Act or the ADA. The plaintiff states that, "during its acute phrase [sic] [her mental illness] prevents her from fully understanding written material and concentration." Compl. ¶ 5. Focusing on this statement, the defendant argues that neither the ability to understand written material nor the ability to concentrate are major life activities. Neither party cites authority for the proposition that "understanding written material" is a major life activity. There is conflicting authority as to whether the ability to concentrate is a major life activity. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.) (concluding that concentration is not a major life activity under the ADA), *cert denied*, 528 U.S. 811 (1999); *Sussle v. Sirina Protection Sys. Corp.*, 269 F. Supp. 2d 285, 299 (S.D.N.Y. 2003) (acknowledging district court decisions within the Second Circuit that have held or assumed that concentration is a major life activity); *Walsted v. Woodbury County, Iowa*, 113 F. Supp. 2d 1318, 1330 (N.D. Iowa 2000) (concluding that the plaintiff created a genuine issue of fact as to whether the plaintiff's inability to "concentrate on a problem long enough to figure it out" means that she is substantially limited in a major life activity); *Lemire v. Silva*, 104 F. Supp. 2d 80, 87 (D. Mass. 2000) (stating that the ability to concentrate is not a major life activity, and more appropriately is framed as a limitation on the major life activity of working, learning, or speaking).

>       interfere with the private lives of employees, it does require that
>       postal personnel be honest, reliable, trustworthy, courteous, and of
>       good character and reputation.

*Id.*, Ex. 6 at 2.  The defendant thus showed that the plaintiff was terminated for cause.

The plaintiff fails to meet her ultimate burden of persuasion.  She concedes a critical fact in this case: she "does not dispute that she received overpayments from OWCP after she returned to work."  Pl.'s Opp.'n at 2.  Rather, she contends that her receipt of such payments should be excused because her "severe mental instability" prevented her from "understand[ing] or comprehend[ing] that she was receiving payments to which she was not entitled."[10]  *Id.* at 3; Pl.'s Aff. ¶ 7.

The plaintiff offers nothing more than excuses for her behavior.  She alleges that her mental illness "prevents her from fully understanding written material and concentration" during its , "acute phrase [sic]."  Compl. ¶ 5.  Her alleged mental disability and its effects are not evidence sufficient to withstand the defendant's showing.  Furthermore, regardless of an employee's disability, an employer may terminate that employee if she has committed misconduct.  *See Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 20 (D.D.C. 2000).

### IV.  CONCLUSION

Neither the plaintiff's affidavit nor other documentary evidence attacks the defendant's neutral explanation for her termination.  Nor does the plaintiff present any evidence of the

---

[10] In addition, the plaintiff states that she believed the compensation checks were attributable to previous on-the-job injuries for which she was entitled to compensation.  Pl.'s Aff. ¶ 7.  The record shows, however, that the plaintiff was notified on March 4 and March 24, 1999 that all prior claims had been denied, closed or terminated by March 4, 1999.  *See* Pl.'s Opp.'n, Ex. 9 (October 12, 1999 Memorandum for the File explaining the plaintiff's fault for creating overpayment).


defendant's intentional discrimination against her. The defendant shows that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law. The defendant's motion for summary judgment is accordingly granted. An order directing the parties in a manner consistent with this Memorandum Opinion is issued separately on this 13th day of December, 2005.

                                                RICARDO M. URBINA
                                       United States District Judge